at the Levi's St. Isaac's Yard. Mr. Williamson? Members of the court, counsel, this case is before you because the trial court refused to enter a declaratory judgment finding that section 17 of the plaintiff's written employment contract was unenforceable as a matter of law because it didn't meet the requirements of liquidated damage clause in Illinois law. The trial court, in addition to that, denied the preliminary injunction which would have maintained the status quo ante of the employment relationship pending a final resolution of the case, and the trial court struck the plaintiff's promissory estoppel claim. All of these actions were taken pursuant to the 615 motion to dismiss. I know you've read the briefs, you're familiar with the facts, and so I won't prolong the statement of that. In July of 2010, the superintendent of District 150 solicited the plaintiff to come to work from North Carolina to Peoria as associate superintendent of District 150. They had two discussions, I believe, oral discussions in Peoria, and at the end of the second discussion, the basic format of their arrangement had been agreed to. They agreed to the position of associate superintendent, they agreed to the term of Dr. Ungrate's contract, which was three years. They agreed to the salary, which was $135,000 a year, and they agreed that the district would make contributions for Dr. Ungrate's contributions under the Illinois Teachers Retirement System. And finally, they agreed that Dr. Ungrate would receive the same type of additional benefits under the contract that all other administrative employees received, such as sick leave, vacation days, and matters that were consistent with an administrator per letter. Dr. Ungrate makes the decision to move with her family from North Carolina, her husband and son, and does so and begins work on August 30, 2010, as associate superintendent. I believe on the second working day she was in Peoria, she's now handed the employment contract, which is attached to the appendix to the appellant's brief, which forms the subject matter of this litigation, and in fact, even though the contract consists of four or five pages, there's only one page and only one section which is controlling the entire litigation of the parties, that's section 17, which is labeled early termination. Now I point that out to you because the trial court fixated on the label of section 17 in making his ruling on the declaratory judgment, and he essentially said this is merely a rights and remedies clause for both parties under the contract, ignoring the fact that the clause itself referenced liquidated damages and set up a formulation for liquidated damages for both the board and the administrator. Now we pointed out to the trial court that Illinois law, when a liquidated damage clause exists, it's perfectly proper to have a liquidated damage clause, but there are parameters to liquidated damage clauses in Illinois in any written contract, whether it's an employment contract or otherwise, and I believe those parameters are stated on page 9 of the appellant's brief, and specifically the Dallas v. Chicago Teachers Union case, and I'd just like to cover those with you briefly, because none of those parameters exist in this case. One, the parties intended it to agree in advance the settlement of damage that might arise from a breach. They did not. The superintendent, Dr. Latham and Dr. Andre, never discussed in any way, shape, or form a liquidated damage clause in July of 2010. Two, the amount provided as liquidated damages was reasonable at the time of contracting, bearing some relationship to the damages that might be sustained. It did not. At any point in time, we can determine what Dr. Ungrate's damages are, and at the time she's terminated, she's due $270,000 under her contract for an additional two years. The board pays her $5,000 and says take a hike, without cause. There's no cause reference in this situation. Three, the actual damage would be uncertain in amount and difficult to prove. They were not. We could take any point in time of the contract and reference pro rata, whether it's monthly, weekly, or daily, and know exactly how much money that Dr. Ungrate was going to be due at that point in time when the contract was terminated. So none of the elements were present. But we have to look at what you alleged in your complaint. In your complaint, you allege, A, that provision can't be enforced because of the stopper. That's one allegation. The declaratory judgment action stated, Your Honor, that it was an unenforceable liquidated damage clause. And then the court has to look at the reasons you alleged in the amended complaint for the unenforceability. I'm not sure under a 615 motion, Judge, and I tried to cite it, it's limited to what the exact allegations of the complaint are. In a 615 motion, the court has to look to whether any cause of action could be stated. So if I improperly or did not allege additional aspects in the complaint, you may be right. I don't think that limits this court at this point in time on whether the liquidated damage clause should be enforced vis-a-vis the declaratory judgment action. All right, then let me ask you how an answer to the declaratory issue will settle the litigation between these parties. If the declaratory judgment had been granted, effectively Section 17 no longer exists in the contract, and the parties can both proceed on that basis. And they could have terminated Dr. Ungrate with cause, of course, as you know under another provision of the contract, which would have required a hearing in front of the school board, and would have required the district to give reasons why Dr. Ungrate was terminated for cause. But if the declaratory judgment action would have been granted, Section 17 effectively would have been stricken, and the parties could have gone on in their relationship just as they had beforehand, but without the unenforceable liquidated damage clause. Now, you anticipate there would never be a written contract between your client and the other side? You know, that's a difficult answer, Your Honor, because my client filed a verified complaint, amended complaint, and that inquiry did come up between us, and she does not remember the specific language that Dr. Latham would have used in July of 2010 as to whether a written contract would be forthcoming. I suspect Dr. Latham alluded to that, but I don't know that for sure, and it's not in the record at this point in time. It's not only not unusual, but typically these contracts are written, are they not? I think so, absolutely. They are written, and I don't know that the fact that there's a written contract presented to my client is a surprise to her. She's been in education for 25 years. It isn't a surprise to her when she's presented with a written contract on September 1st. What is a surprise is the liquidated damage clause, a complete and total surprise. But she signed it after that. She signed it, and two days later, talks to her husband, says, look at this, and she knew what she saw. I'm not suggesting otherwise. She has a PhD. She knew what she saw, and she talks to her husband, and frankly, they both decide we don't have any choice. We are here. You're working. He's working, by the way, also as an administrator at District 150 under certain circumstances. They have moved from their prior jobs, Your Honor, and they're there. So she knows what she sees on September 1st, and she signs it. I don't think that's the basis for declaratory judgment being denied. There's a second aspect to the liquidated damage clause. The vast majority of time in employment contracts, consideration is just something that's not considered a great deal by the court system because the court systems inevitably say, well, the continued employment is consideration. Not in this case. My client's on her second day of employment. She had no idea there was going to be a liquidated damage clause. The terms and conditions of her employment have been materially changed by the addition of this liquidated damage clause. She received a mutual benefit in that she could terminate the agreement with 30 days. An interesting point, Your Honor, because another aspect of Illinois law relating to liquidated damage clause is equal bargaining position and an equal right in the liquidated damage clause. As I point out in the brief, the administrator is paying more money pro rata than the school district if there's a breach and the liquidated damage clause is invoked. So this is a contract prepared by District 150's attorneys that my client has never seen until after she begins work, and it's an unequal bargaining position on the liquidated damage clause to begin with, which is itself illegal, Judge, so I'm glad you brought that up. Tell me how it's unequal? Pardon me? How is it unequal? Well, I covered that, I believe, if I can find it quickly.  When you look at what Ungrate would have to pay if she exercised Section 17, it is different on a pro rata basis to the district than what the district would have to pay her on a pro rata basis. Which is less. Pardon me? She pays $2,500 and the district pays... Now, she would pay a minimum $2,500. She's actually paying more than $2,500 and she'd be paying more than $5,000 at the time of termination if you read the terms of the agreement. So it's not the same situation for the district as it is for the administrator. Now, I don't want to leave the liquidated damage clause precipitously, but I do want to get on to the issue. First of all, in the preliminary injunction, we have shown all the basis for the preliminary injunction at the time we have this hearing. Granted, my client now has moved to Nashville, Tennessee, and her situation has changed tremendously. The thought may have occurred to any one of you that she really doesn't need a preliminary injunction at this point in time because the circumstances have changed, and I agree to that. But the appeal has to be taken from the facts at the time the preliminary injunction was originally denied, and that's why it's included in this appeal process. So are you saying it's moved? I don't think it's moved because I think the trial court committed reversible error at the time of the preliminary injunction. But if the preliminary injunction were held today, certainly the issues that were raised at that time have altered. And moved may be a word that I would use in that context. I just wanted to be clear that if the case is sent back down, we wouldn't necessarily seek another preliminary injunction. So what's the point in us deciding that issue? Because, Your Honor, we'd be entitled to damages from the point in time of the denial of the trial court, the preliminary injunction, up until the time of this court's order, I believe, or at least until the time that my client left for Nashville, Tennessee, when the damage difference would be the money she's receiving under her present job, which is half $135,000, and the time we calculate the damages. I'm not giving up on the preliminary injunction because I think the court improperly denied it. Then we get to the promissory estoppel argument. And even the Supreme Court in the Newton Tractor case has always referenced promissory estoppel arguments to be in absence of a written contract. And this court allowed the appellant to file, as a supplemental authority, the case of Janda v. United States Cellular Corporation. And if there's been any question up until now, we now know that an appellate court in this state has specifically held that a promissory estoppel argument and claim by the plaintiff can exist even when there is a written employment contract in force. Now, the defendant spent a great deal of time responding to that and interpreting the Janda case, and it occurs to me that the entire substance of that opinion is stated in one sentence on page 34 of the opinion. And if I may, I'll just read it to you. And that's exactly what we have here. My client's oral contract promissory estoppel claim that arose in July of 2010 is based on different performance factors than the written contract that was presented to her in September of 2010. So what is the difference in the consideration? Pardon me? What is the different consideration? The different consideration is that she now has to work under a liquidated damage clause, which allows her to be terminated with a 30-day notice provision. So she can be terminated after one month of employment. That is a different performance factor than what she understood and why she moved to Peoria in July of 2010. As I understand it, there are only two elements we must now show the court in terms of the promissory estoppel claim, and that is what I just indicated to you. And secondly, that the Prentiss v. UDC advisory case holds that there must be an enforceable written contract to preclude a promissory estoppel claim. And we would naturally say to you that Dr. Ungrate's written contract was not enforceable in light of the Section 17 clause. You have two minutes. Thank you. I'm going to conclude my argument at this point in time, unless you have any questions. I have a procedural question. Your amended complaint had a count 2 for injunctive relief, but the court also ruled on, before that, a motion for injunctive relief and denied it. Yes, that's correct, Your Honor. Did you appeal that ruling? I did not. So if we grant your relief, if we consider the issue on count 2, what happens to the court's ruling on your motion for injunctive relief? That stands. It has passed. And the problem with appealing a preliminary injunction is the circumstances always change. At the time of a preliminary injunction, the plaintiff was saying, I have a situation right now that needs to be resolved. So when it goes up on appeal, inevitably the position of the plaintiff has changed. But I'm talking about you elected two separate procedures to get the same result. We didn't have a hearing on the second instance of the preliminary injunction. We only had a hearing on the first, on the original complaint. Right, and it was denied. It was denied. And it wasn't appealed. It was not appealed. And the counts that you filed in the amended complaint are initially verbatim. I think so. I think I would be hard-pressed to say, other than factual allegations as the background of the case, I'd be hard-pressed to say there's any difference between the request for the preliminary injunction in the amended complaint and the original complaint. So that's correct. So that order stands. Pardon me? So that order stands. I'm sorry? That order stands, denying your motion for a preliminary injunction on the same two counts and the same allegations. That may be. That may be. And that's why I made earlier reference to the fact that a preliminary injunction is not really the plaintiff's remedy at this point in time, if the case is remanded. I mean, I have to be candid with the court. Those circumstances have changed. Thank you. May it please the Court, I'm Stan Eisenhammer. I'm representing the Defendant, Tappa Lee, the Board of Education of District 150, Peoria School District. This case involves an attack on the validity of a contract and raises two basic issues. One, Section 17, whether that is a valid, enforceable 30-day termination clause. And second, whether the plaintiff has stated enough allegations in the complaint to support a cause of action for either fraud or estoppel. Well, I don't want to go through the facts. I do want to emphasize a couple of facts. One, that was alleged in the complaint, because we have to base this on the complaint. It's alleged in paragraph 4 that on July 21, Ms. Ungeret met with the superintendent where they discussed the terms of the contract. In the complaint, it does not say that she promised her all of the benefits that every other administrator got. It only says health insurance, pension, and salary. On August 9, the Board approved the written contract. Again, that was alleged in paragraph 6. And in paragraph 6, it also is alleged that Ungeret discussed specifically Section 17 with her husband, and I think September 1, which is in paragraph 7, somewhere around there, she signed the contract. What we have of Section 17 is a 30-day early termination provision for contract. It is a standard provision. Courts have said it's valid whether it's supported with additional payment or if it's just a 30-day termination clause without any additional payment. Neither the plaintiff nor we have found any case that says a standard 30-day termination clause is invalid in Illinois. They've uniformly been upheld. When it's exercised properly, as it was in this case, we gave 30 days notice, the courts have said, the plaintiff is entitled to no damages. I don't think that that is what Apollon's argument is. I think their argument is that that wasn't bargained for. That that was not part of the bargain between District 150 as represented by the superintendent and Ms. Ungeret in July. And that while this written contract was approved by the Board in August, that she wasn't a party to that approval, and that by the time she is presented with that, she's already living here. So there wasn't a meeting of the minds as to that provision. And in that case, I don't know that without cases that say it can't be enforced. There are. And that went to, I think, the last part of the argument, which is on the promissory stop law. That where there's a written contract, you can't have a case for promissory stop law, where there's adequate consideration, and the issue of performance which forms the detrimental reliance is the same performance that is based on the consideration for the contract. Here, the performance that he's allowing for detrimental reliance is I agreed to perform my duties under the contract. That's the same consideration that's applied in the collective bargain. The contract here, I have to perform my duties. It's exactly the same. In those situations, the courts have said you don't have a cause for promissory stop law because they're exactly the same. The case that he cited in a supplemental motion didn't involve the same performance. There was a contract, and then the issues that gave rise to the promissory stop law happened four years later involving different performance considerations. So there, the court said, no, you can't use the earlier contract to prevent a promissory stop law and new promises, new consideration. Here, both happened at the same time. With respect to, first, there can't be an oral contract or contract when they met on July 21st for a number of reasons. One, it's a three-year contract under statute of frauds, you can't have a contract that exceeds three years. On top of that, the superintendent doesn't have authority legally to provide a contract. And people who deal with public bodies deal at their own risk. The board has the authority to offer the contract. And then third, the written contract, there was consideration, there was additional consideration. That contract had a number of different clauses in there, and at the very least, it was a written contract. So at the very least, the added consideration was you got a written contract that provided, even if it provided the same benefits, it was a written contract where no contract existed before. So there was both, there was no contract before, and there was consideration then when she signed a new contract. Really what this case is about is someone who has had a chance to look at the contract, made a decision on making a deal. She decided that the risks of the early 30-day termination was well worth the risk of this $135,000 contract. And she made that deal. She could have bargained, she could have, when she saw it, she could have bargained and said, look it, $5,000 is not enough. There's a clause, I can't work under that clause, or I want more money under that clause. But she didn't. She signed it, taking that risk. Now what she's asking for the court, now that it didn't work out for her, she's asking you to fix this. And the courts, whether it's a fraud, a claim for fraud, or a validation of this contract, have said no. This is a valid contract, entered in, a good bargain for exchange. She doesn't want to invalidate anything else in the contract except that clause. It's an essential for that clause. I mean, that's like really saying, I want the court to reform this contract because this portion of the contract, the one that now I look back and got a bad deal on, should be taken out. And there's no authority for that. If the discussions had been she could be paid $235,000, but the contract that she presented said $135,000. She signed it anyway. That was her decision. We're in the same boat. Would you speak to the validity of the consideration, this mutuality? There was mutuality overall in this contract. You can't separate out clauses. She's getting $135,000 promising to perform. We're paying her $135,000 and she's promising to perform. There's these various clauses, such as health insurance. There's an early termination for her. There's an early termination for her. It's not up to you to weigh. Was the consideration adequate on both sides? It's not really your job to do that. That's not why I tell you your job. Sometimes I need instruction. He's trying to do it, again, through what he's called a liquidated damages clause. This is not a liquidated damages clause. It's a purely 30-day termination clause. If we gave her no money. The contract calls it liquidated damages. I know. He mentioned that you shouldn't go by labels. It probably was mislabeled. It should have been called severance. I didn't draft the contract, so I can't complain. In fairness to counsel, it is called liquidated. It is called liquidated damages clause. A rose by any other name is still a rose. In this case, liquidated damages is not a rose. In this particular case. This is a severance provision, an early termination provision. If there was no money given. If there was no money given on our part, and said, look, it's just a 30-day termination provision. No court has invalidated one of those. Saying, hey, you really should pay extra money. In fact, when courts have said you've breached a 30-day termination or a 60-day termination by either not giving a notice or whatever, the courts have said your measure of damages isn't the remaining years on the contract. It is the 60 days or 30 days that you didn't give notice. That's the measure of damage. Not, in this case, 270, but here, 10% of the remaining. The theory of this amended complaint is not that they failed to give notice. The theory is the entire clause is invalid. Right. But these clauses have been upheld. I mean, what makes this unique is they've been held up or there's been no other money given. Clearly. No one has even tried to make the argument that, hey, on a 30-day termination clause, I should get more money. Here it was $5,000. It doesn't turn that into a liquidated damages clause, even if it says it's liquidated damages. For one good reason. When courts have invalidated liquidated damages clause, they've invalidated it because the payment required for breach is too high. It doesn't determine the measure of damages. It's so high that it's a penalty. The person who raises that argument is not the person who receives the money, but the person who pays out the money. So the only person who can argue, let's say it is a liquidated damages clause, the only person who can argue that this is a liquidated damages clause is the board, is the school district, saying, you know, this is too high. It doesn't approximate the number of damages that she's entitled to. But then it turns out this is not a liquidated damages clause because the other problem with liquidated damages clause, the purposes of a liquidated damages clause, is to try to ascertain a set amount of damages when damages are sort of hard to figure out in case of a breach. Here there's no breach. The board followed the contract correctly. So there is no breach. There is no money damages here. The courts have said, if you follow a 30-day termination clause and give the proper notice, there are no more damages. Or in fact, if you give the proper notice, you only get 15 days. Do you want to speak to the injunctive relief that's been requested? Yes. I can't remember now whether he appealed for both orders or for one order. He just appealed for one order. It was a motion for injunctive relief along with count two of the amended complaint and the original complaint. The court found that the original complaint didn't state cause of action, couldn't, and denied the motion for injunctive relief. There's no appeal from that denial of the motion. So with respect to that motion, since he didn't appeal that motion and didn't appeal the order, I think the motion... The denial of the motion and the denial of, I think, the dismissal of the original complaint were in one order, I think. I'm not certain. Yes. So if that's true and he didn't appeal that order, then he can't appeal the denial of the injunction. That's what I'm concerned about. I'll look at it more carefully. Right. But in any... Addressing that point on the injunction, in these cases, for a wide variety of reasons, his new count for injunction, or even if he has the motion before you, should have been denied. Because if you rule that there's no valid cause of action, there's no injunction. There's a perfectly... In these breach of contract cases, there's an ascertained amount of damages. You know what it is. I mean, that's the remedy. You know, you don't have... There is a remedy, which can be a part of that law, which is damages. You don't need an injunction. He's actually not going to go back to work. I mean, that's one of the reasons why in these cases you don't have an injunction and put the person back to work or pay the person the money. So it was for a variety of grounds that you judge injunctions. It was quite appropriate to deny that motion. And it's quite appropriate, assuming anything survives this, that the injunction count should also be dismissed. Do you agree the injunctive relief was tied to count one, the declaratory action? I guess so. I mean, he was trying to put all of his eggs in one basket, I think. So yes, it is. Because it's all really dealt with. This part is invalid, which invalidate... I find it hard to invalidate a portion of the contract without invalidating the contract. And it's part and parcel. You say, oh, I'm going to leave this clause, and now what should we have done? I mean, the whole contract becomes invalid, is invalid. Because it was all, in essence, a part of it. I don't think the contract had a provision that said severability provision, but I could be wrong. I hope you don't. I hope you just decide that this case is... In conclusion, that this clause is a valid standard clause, and it should be upheld. That really here, all the plaintiff wants is another bite of the apple, and that bite should be denied. Thank you. Thank you. I'd like to spend just a minute or two pointing out what the appellant is not arguing in this case. We're not saying a 30-day clause in the employment contract is unenforceable. Of course it is. The 30-day clause is tied in and inherent with the liquidated damage clause. That's the problem. That's the district's problem. District's problem is also that my client had absolutely no input into Section 17. Their attorneys prepared it. Their board agreed to it without my client even knowing it, and now they're trying to enforce it when all three elements under Illinois law are not met. And they're clearly not met. As to the difference between the situation in Janda case, I think there's a four-year difference between the two actions. There's nothing in the Janda case which indicates the time frame itself makes any difference. So the fact that one of the occurrences in this case happened in July and one of the occurrences happened in September is certainly going to be sufficient to create the same legal theory. That is, they're happening at different times. It doesn't make any difference if it's only 60 days or four years. That's not at the point of the ruling in the Janda case. So the counsel is misinterpreting that. As to the superintendent's ability to engage in a situation that creates promissory estoppel, the statute's right in front of you, and it says the superintendent shall have control of the selection, retention, and dismissal of all other employees. And, of course, the district then did exactly what she wanted them to and ratified the situation with the associate superintendent in this case. I'd also like to point out that no matter how many times counsel says it, and I think he probably convinced the trial court of this, he can say as many times as he wants to, this is not a liquidated damage clause and what else can it be? It says it's liquidated damage. It sets up a formula that one side's going to pay to the other if that person leaves or that the other side's going to pay to the administrator if the board decides to have her leave. And they're not the same either. So I don't think counsel can keep repeating that and change bread and water. And that's his problem in this case. Now, again, on the preliminary injunction, Your Honor, you've mentioned that several times, and I think you brought up a proper point. We had a hearing on the original complaint on the motion for preliminary injunction, and that was not appealed. And then when the amended complaint was filed, frankly, counsel thought the judge isn't going to change his mind on the liquidated damage clause, we'll just go up now. And so he dismissed the count two, I believe it was, which was the request for preliminary injunction. So you correctly analyzed and stated, and there may be a problem ultimately for the plaintiff in appealing, not referencing in the notice of appeal that they're appealing the denial of the motion for preliminary injunction under the original complaint. I don't contest that, because I think ultimately in this case, this court has several choices when the case is sent back down, and the preliminary injunction is at the bottom of our list at this point. Because my client no longer lives here, and it's going to be very difficult for her to undertake the associate superintendent position again, although she'll have that choice, presumably. She can move back. Technically, what was appealed here was the dismissal under 615. Of all three counts. And the complaint had three counts. And so a dismissal under 615 is that none of the counts stated a valid cause of action under Illinois law. That was technically how this is before us, correct? That's correct, Your Honor, and it was dismissed with prejudice. So if under 615 you look at count one, count two, and count three, if under Illinois law the counts do not state causes of action, then you affirm. If they state causes of action, you reverse. Isn't that what this is about? That's what I thought, Your Honor, although Judge Wright pointed out that procedural discrepancy, and she's correct. I'm not sure how that's going to play out. Pardon me? Just say that again. It'll make me feel better. And there is a separability clause in the contract that quickly looked at. Exactly. It's paragraph 29. Exactly. We asked this court to do one of several things. First of all, we obviously asked the case be remanded under declaratory judgment. We think that's absolutely improper. But what's become a much stronger case since we filed this case originally is a promissory estoppel claim. If you look at the facts and you look at what the law presently is in Illinois, the district has a huge problem on promissory estoppel. But the problem for your client is that the negotiations are not binding on the board. They are binding on the board, Your Honor. Even if they weren't binding on the board, they ratified it before she got here. They did that on August 9th, and that eliminates any argument that the superintendent didn't have the right or the authority to enter into this arrangement with the associate superintendent. If there's any other questions, otherwise I'll sit down. Thank you, both of you. The quality of your arguments were very high, and we appreciate the level of preparation both of you brought to this court. We're going to take the matter under advisement, and there will be a short recess while we prepare for a presentation.